IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELMER BONILLA MATUTE,<br><br>Defendant. | Case No. 3:19-cr-00714-CRB<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT** |

Defendant Elmer Bonilla Matute ("Defendant") moves to dismiss his indictment based on the four-year delay between his indictment and arrest, which he argues constitutes a violation of his Sixth Amendment right to a speedy trial. See Mot. (dkt. 16). For the reasons explained below, the Court DENIES Defendant's motion.

**I.     BACKGROUND**

In early 2018, the San Francisco and Richmond Police Departments began investigating Defendant and other suspected associates of a drug trafficking organization headed by Eduardo Viera-Chirinos (the "Target Organization"). See Opp'n (dkt. 22) at 1. On June 5, 2018, law enforcement executed a search warrant at Defendant's suspected residence in Richmond, California. Id. at 2.  Officers seized substantial evidence of drug distribution, including drugs, various paraphernalia associated with manufacturing and trafficking drugs, large amounts of cash, and cell phones that contained drug-dealing communications. Id.  Defendant was present during the search. Id.

On December 19, 2019, a federal grand jury returned an Indictment against Defendant stemming from the June 2018 search. Indictment (dkt. 1); Opp'n at 3. Defendant was charged with four counts of possession to distribute drugs in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(c). Id. Before he was indicted, Defendant left the United States and returned to his home country of Honduras. Mot. at 1. In February 2024, Defendant was arrested and extradited to the United States. Opp'n at 3.

Defendant now moves to dismiss the Indictment based on the four-year-and-one-month delay between the filing of the Indictment and his arrest, which he argues violates his Sixth Amendment right to a speedy trial. See Mot. Defendant points to the government's October 2023 Motion for Partial Unsealing (dkt. 4) as proof that the government took "no steps to extradite Mr. Matute until, at the earliest, October 2023." Mot. at 1. Defendant cites the government's representation in its partial unsealing motion that it "anticipate[d] working with" various authorities to locate, arrest, and extradite various individuals in Honduras, including Defendant. Mot. for Partial Unsealing at 1 (emphasis added). Relying on the "anticipatory" tone of the government's motion, Defendant argues that this shows that the government did nothing to locate and extradite him until late 2023. Mot. at 3.

In response, the government asserts that the October 2023 motion was "the culmination of years of sustained efforts to locate Matute by various components" in domestic law enforcement agencies and their Honduran counterparts. Opp'n at 1. The government details its extensive efforts to locate, arrest, and extradite Defendant, including wiretaps of suspected associates, interviews with numerous other criminal defendants, legal preparation for Defendant's extradition, and coordination with Honduran law enforcement. See id. at 3–10.

II. **LEGAL STANDARD**

"The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." Doggett v. United States, 505 U.S. 647, 651 (1992). "The government has the primary, though not exclusive, responsibility to ensure that the defendant is brought to trial." United States v. Mendoza, 530 F.3d 758, 763 (9th Cir. 2008). To determine whether a defendant's speedy trial rights have been violated, the Court balances the following factors: (1) the length of delay; (2) the reason for the delay;

2

(3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). "None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speed trial right has been violated." Mendoza, 530 F.3d at 762. Instead, "they are related factors and must be considered together with such other circumstances as may be relevant." Barker, 407 U.S. at 533. The "factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Barker, 407 U.S. at 533.

### III. DISCUSSION

The Court addresses: (A) the length of delay; (B) the reason for delay; (C) Defendant's assertion of his speedy trial right; and (D) prejudice to Defendant. Balancing these factors, the Court concludes that Defendant's right to a speedy trial was not violated.

#### A. Length of Delay

"The length of the delay is a 'threshold' factor, and a sufficiently lengthy delay necessitates an examination of the other three [Barker] factors." United States v. Alexander, 817 F.3d 1178, 1181 (9th Cir. 2016) (internal quotations omitted). "[D]elays approaching one year are presumptively prejudicial." United States v. Gregory, 322 F.3d 1157, 1161–62 (9th Cir. 2003). Here, the government concedes that a delay of four years and one month exceeds this threshold, and therefore triggers an inquiry into the other three Barker factors. See Opp'n at 12. Thus, the Court proceeds to the remaining factors.

#### B. Reason for Delay

In the Ninth Circuit, "[t]he reason for delay is the focal inquiry." United States v. Sears, Roebuck & Co., 877 F.2d 734, 739 (9th Cir. 1989). The government has "some obligation to pursue a defendant and bring him to trial." Mendoza, 530 F.3d at 762–63 (internal citation omitted). "If the government can show that the delay was wholly justifiable because it proceeded with reasonable diligence, the defendant's speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay." Alexander, 817 F.3d at 1182. Law enforcement is not required to "make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension."

3

United States v. Sandoval, 990 F.2d 481, 485 (9th Cir. 1993) (quotations and citation omitted).

Defendant asserts that the government did not "[undertake] any effort to pursue [him] and bring him to trial between the indictment, filed in December 2019, and sometime after October 2023." Mot. at 2. In support of his position, Defendant cites the government's representation in October 2023 that it "anticipate[d] working with officials of the U.S. Department of State, foreign officials, and other law enforcement authorizes in order to locate, arrest, and extradite" Defendant and various associates. Mot. for Partial Unsealing at 1–2 (emphasis added). Focusing on the "anticipatory" language, Defendant posits that the government was not reasonably diligent in apprehending him over a four-year period, and therefore violated his speedy trial right. See Mot. at 3.

However, the government demonstrates that it made significant efforts in the years since the Indictment to locate Defendant and bring him to trial in the United States. The government's efforts to locate Defendant started before he was formally indicted. Id. In July 2019, the government intercepted several calls between Defendant and another suspected member of the Target Organization discussing drug trafficking. Opp'n at 3. Then, on July 31, 2019, the government obtained a geolocation "ping warrant" for two telephone numbers believed to be used by Defendant. Id. Three additional ping warrants were later obtained for other numbers believed to be used by Defendant. Id. at 4. Based on the location data obtained from these warrants, agents located a car believed to belong to Defendant and conducted a traffic stop on December 17, 2019, but neither of the two individuals identified in the car were Defendant.[1] Defendant was indicted two days later. Opp'n at 4. Law enforcement logged the accompanying arrest warrant into its databases, to help ensure that Defendant would be held and returned to this District should he be arrested elsewhere. Id. at 5.

After he was indicted, the government attempted to locate Defendant based on

---

[1] Defendant asserts that he had been living in Honduras since about December 7, 2019. Mot. at 1

numerous interviews with other criminal defendants involved in the Target Organization. Between August 2019 and March 2023, the government conducted a series of interviews with six separate individuals to determine members of the Target Organization and obtain Defendant's contact information and location in Honduras.[2] See id. at 3–8. Meanwhile, the government began preparing extradition applications for Defendant and other suspected members of the Target Organization in September 2020. Id. at 7. The government asserts that each of these applications "required extensive documentation" and that it began "assembling the information required" at that time. Id. After conducting six additional interviews and compiling this information, the government began submitting draft extradition applications to the Justice Department's Office of International Affairs ("OIA") in June 2021. Id. at 8. In January 2022, the OIA informed the government that it was not possible to convey extradition requests to Honduras until the government could represent that it knew the location of the target individuals, including Defendant, in Honduras. Id. So, the government continued its efforts to locate Defendant and other suspected members of the Target Organization.[3] Id.

As part of those efforts, the government coordinated extensively with various domestic law enforcement agencies and their Honduran counterparts to locate Defendant, including the U.S. Immigration and Customs Enforcement, the Drug Enforcement Administration ("DEA"), the U.S. Marshals Service, and attachés in Honduras. See id. at

---

[2] Defendant argues that interviews during this period in which he was not discussed should not factor into the reasonable diligence analysis. Reply (dkt. 29) at 2; see Diamond Decl. (dkt. 22-2) ¶¶ 2.h.–m. But those interviews were part of the government's overall investigation into members of the Target Organization, who the government needed to "attempt to arrest [] at the same time" as Defendant. Resp. at 15. The Court finds those efforts relevant.

[3] Defendant makes much of the fact that the government had information about Defendant's location and his Honduran phone number in October 2020 and seemingly never tried to contact him. See Reply at 3. But the government states it could not corroborate the information, which it received from one of the individuals interviewed. See Resp. at 14; Diamond Decl. ¶¶ 2.f.–g. Additionally, the extradition applications required the government to specify which "US agent/official in Honduras . . . provided the location information." Resp. at 14 n.11.

9. Finally, in March 2023—for the first time—the government obtained last known addresses for Defendant and some of his alleged associates in Honduras that it was able to corroborate. Id. By September 2023, the DEA had located Defendant and three other extradition targets, and the OIA approved their extradition applications on October 25, 2023. Id. at 10. On December 19, 2023, OIA informed the government that the extradition applications had been sent to the Honduran embassy, which was preparing the diplomatic notes for presentation. Id. The government then waited to submit the applications until January 2024 because the Honduran Supreme Court was in recess from at least mid-December through the end of 2023. Id. Shortly thereafter, the applications were approved, and Defendant was arrested and returned to the United States. Id.

The government's continuous efforts to locate Defendant certainly satisfied the "reasonable diligence" required of it. See Alexander, 817 F.3d at 1182. For example, in United States v. Hernandez, the Ninth Circuit found that the government acted with reasonable diligence "when it attempted to arrest [the defendant] at his last-known address, circulated [his] photograph at nearby businesses, and monitored a federal law enforcement database." 821 F. App'x 776, 778 (9th Cir. 2020). The years-long, inter-governmental effort to locate and arrest Defendant in this case readily clears the same bar.

Defendant's comparison to Mendoza is inapt. In that case, as in this one, the defendant left the country before being indicted. Mendoza, 530 F.3d at 761–62. But the government in Mendoza did not make "any efforts . . . to apprehend Mendoza beyond merely entering Mendoza's arrest warrant in the law enforcement database." Id. at 760. Nor did the government make any "effort to contact Mendoza to inform him that he had been indicted" despite having contact information for multiple relatives. Id. at 763. Here, by contrast, the government actively interviewed suspected associates of Defendant for years in attempt to obtain his contact information and location. See Opp'n at 3–10. This is not a case where "the government simply put a warrant out on the law enforcement database so that [Defendant] would be detained when he returned to the United States." Mendoza, 530 F.3d at 763. Law enforcement expended significant efforts to find and

6

detain Defendant.

The government further urges the Court to consider that its "efforts to locate Matute necessarily had to be conducted in parallel with other extradition targets" because "it was critical to attempt to arrest defendants at the same time." Opp'n at 15.  The Court gives credence to the government's assertion that had it "attempted to locate and arrest Matute while ignoring the other fugitives, it would have endangered the government's investigation as to those other defendants." Id.  This is a valid reason for delay that does not undermine Defendant's right to a speedy trial.  Other courts in this circuit have come to similar conclusions.  See, e.g., United States v. Pelayo, No. 21-30249, 2023 WL 4858147, at *3 (9th Cir. July 31, 2023) (holding that speedy trial right not violated where "increased complexity" of multi-defendant drug-trafficking case caused delay); United States v. Neddenriep, No. 216CR00265GMNNJK, 2019 WL 6123778, at *4 (D. Nev. Nov. 7, 2019) ("This case involves 23 defendants and . . . is a complex case.  The Court finds it reasonable that the United States did not want to jeopardize its ongoing investigation by notifying the targets of said investigation . . . the Court finds that a valid reason supported the delay . . . "); United States v. Ixta, No. 08CR00988 BTM, 2012 WL 896154, at *4 (S.D. Cal. Mar. 14, 2012) (holding that government was not to blame for delay where it chose not to arrest defendant for 33 months while it located another defendant).

Moreover, the Court agrees with the government's point that the delay in this case should be considered in the context of the COVID-19 pandemic—specifically the government's nine-month delay between Defendant's indictment in December 2019 and the government preparing extradition applications in September 2020.  See, e.g., United States v. Agli, No. 21-30283, 2023 WL 2387580, at *2 (9th Cir. Mar. 7, 2023) (explaining that pandemic was legitimate reason for pre-trial delay).  That the government pursued Defendant through the worst of the pandemic further underscores its diligence.

The circumstances indicate that the government was reasonably diligent between Defendant's indictment and his arrest.  Considering the government's active efforts to locate and arrest Defendant in Honduras and bring him to justice in the United States—and

7

in light of the complexity of a multi-defendant investigation—"the reason for delay weighs against dismissal." See United States v. Corona-Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007).

### C. Assertion of Speedy Trial Right

A defendant who is unaware of an indictment "is not to be taxed for invoking his speedy trial right only after his arrest." Doggett, 505 U.S. 647, 654. Defendant asserts, and the government concedes, that there is no evidence that Defendant "ever knew that he was formally charged" before moving to Honduras. Opp'n at 15. Nevertheless, the government argues that, because he left for Honduras after the government searched his apartment, Defendant "chose to leave the United States knowing that he was facing potential prosecution, and it was that decision that caused the delay in this case." Id. at 15. Thus, the government posits that Defendant's "decision to leave the United States . . . should weigh against his motion." Id. at 16.

The Court is convinced that Defendant knew that he was being targeted by law enforcement, given that he was present when agents searched his apartment and seized numerous pieces of evidence related to drug trafficking. See id. at 2. However, the Ninth Circuit distinguishes between knowledge of an investigation and knowledge of an indictment. See United States v. Williams, 782 F.2d 1462, 1465–66 (9th Cir. 1985) ("Although there was some indication that Williams may have known that postal authorities were looking for him, there was no evidence, in fact, that Williams knew of the indictment . . . Thus, the failure to assert his right to a speedy trial will not be weighed against [defendant]."); United States v. Beamon, 992 F.2d 1009, 1013 (9th Cir. 1993) (holding that defendant was not at fault for failing to assert speedy trial right where he knew of an ongoing investigation but not an indictment); see also United States v. Gonzalez-Martinez, 634 F. Supp. 3d 853, 878–79 (E.D. Cal. 2022) ("[T]he Ninth Circuit has drawn a distinction between a defendant's knowledge that he is being investigated or wanted and a defendant's knowledge of a criminal indictment having been issued against him."). Accordingly, because Defendant asserted his speedy trial right promptly after

arrest, this factor weighs in Defendant's favor.

### D. Prejudice to Defendant

Because the government proceeded with reasonable diligence, Defendant's "speedy trial claim generally cannot succeed in the absence of a showing of actual prejudice resulting from the delay." Alexander, 817 F.3d at 1182. The Supreme Court recognizes "three forms of prejudice that can result from post-indictment delay: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." Mendoza, 530 F.3d at 764 (quoting Doggett, 505 U.S. at 654) (internal quotations and brackets omitted). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532). The first two forms of prejudice are inapplicable because Defendant was not incarcerated until early 2024 and did not learn of the Indictment until his arrest. See Mot. at 1, 4. Therefore, to prove prejudice, Defendant must show a possibility that his defense will be impaired by the "dimming of memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654.

Defendant fails to do so. Defendant argues that "given the delay of more than four years between the indictment and the arrest, prejudice to Mr. Matute should be presumed and the indictment dismissed." Mot. at 4. However, the length of delay here is not long enough to be presumptively unconstitutional. In United States v. Lonich, the Ninth Circuit held that a three-year delay was substantial but "not conclusively a Speedy Trial Clause violation" because "[i]t is not nearly as egregious as other cases in which courts have found Speedy Trial Clause violations." 23 F.4th 881, 894 (9th Cir. 2022) (citing Doggett, 505 U.S. at 657 (8.5-year delay); United States v. Black, 918 F.3d 243, 248–49 (2d Cir. 2019) (5.75-year delay); United States v. Handa, 892 F.3d 95, 107 (1st Cir. 2018) (6.5-year delay); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (5-year delay). The delay in this case, while certainly substantial, is less than the delays in all of these cases.

And Defendant points to no evidence that he will be prejudiced beyond this

supposed presumption. Nor does the Court see any reason why he would. If the case proceeds to trial, the government's case "will rely in large part on physical and electronic evidence seized from [Defendant's] residence on June 5, 2018, including drugs, drug trafficking paraphernalia, [a] pay/owe sheet, and text messages found on [Defendant's] phone evidencing his drug trafficking activities." Opp'n at 17. Thus, the type of evidence in this case does not strongly implicate the "dimming of memories and loss of exculpatory evidence," as a witness-heavy case might. See Doggett, 505 U.S. at 654.

Although two of the Barker factors weigh in Defendant's favor, "the absence of a showing of actual prejudice resulting from the delay," coupled with the government's reasonable diligence in pursuing Defendant, compels the Court to conclude that Defendant's speedy trial claim fails. Alexander, 817 F.3d at 1182.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's motion WITHOUT PREJUDICE to refiling should the discovery produced by the government reveal actual prejudice resulting from the government's delay.

**IT IS SO ORDERED.**

Dated: August 22, 2024

_____
CHARLES R. BREYER
United States District Judge