PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DAN M. KARMEL (NYBN 5151485)
SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
    Telephone: 415-436-7200
    Fax: 415-436-7234
    dan.karmel@usdoj.gov
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00714 CRB |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| ELMER BONILLA MATUTE, | |
| Defendant. | |

## I.   INTRODUCTION

In early 2018, officers from the San Francisco and Richmond Police Departments began investigating individuals suspected of distributing drugs in the San Francisco Bay area. During the investigation, officers determined that defendant Elmer Matute was associated with and likely involved in the drug trafficking activities of Eduardo Viera-Chirinos, the head of a target drug trafficking organization. On June 5, 2018, law enforcement executed a search warrant at Matute's suspected residence in Richmond, California, during which they seized, among other things, distribution quantities of heroin, methamphetamine, cocaine, and cocaine base.

On December 19, 2019, a federal grand jury sitting in the Northern District of California returned an Indictment against Matute, charging him with four violations of 21 U.S.C. § 841(a)(1), (b)(1)(C), stemming from the June 5, 2018, search: Possession with Intent to Distribute Heroin, Possession with Intent to Distribute Methamphetamine, Possession with Intent to Distribute Cocaine Base, and Possession with Intent to Distribute Cocaine. Presentence Investigation Report (PSR) ¶ 1. Based on the charges, an arrest warrant was issued that same day, and it remained valid and executable until Matute was apprehended in Honduras on January 12, 2024. *Id.* ¶ 4. Matute was then extradited to the United States on February 22, 2024, and on February 23, 2024, he made his initial appearance before the Honorable Peter H. Kang, U.S. Magistrate Judge. *Id*. On November 26, 2024, Matute pleaded guilty to all four counts pursuant to a plea agreement. *Id.* ¶ 2.

For the reasons set forth below, the government recommends a sentence of 57 months' custody followed by three years of supervised release.

## II.    THE CHARGED CONDUCT

The government agrees with the description of the charged conduct as set forth in the PSR. In 2018, law enforcement identified Matute as an individual involved with a drug trafficking organization based in San Francisco, that was responsible for distributing large quantities of heroin, methamphetamine, cocaine base, and cocaine. *Id.* ¶ 6–7. In particular, on two occasions in May 2018 law enforcement observed Matute delivering suspected narcotics. *Id*. ¶ 6.

On June 5, 2018, law enforcement executed a search warrant at Matute's suspected residence in Richmond, California. *Id.* ¶ 8. Among other things, they located an air compressor with an internal compartment containing bundles of cash, narcotics, and a pay/owe sheet. *Id.* ¶ 10. One of the names on the pay/owe sheet was "Jordan 23," which is one of Matute's aliases. *Id.*

In total, law enforcement authorities seized approximately 1,173 gross grams of methamphetamine, approximately 750 gross grams of heroin, approximately 467 gross grams of cocaine base, and approximately 169 gross grams of cocaine, as well as $73,118. *Id.* ¶¶ 10–11.

## III.    SENTENCING GUIDELINES CALCULATIONS

The parties have agreed that the Sentencing Guidelines calculation for Matute's offense level is as follows:

| | | | |
|---|---|---|---:|
| | a. | Base Offense Level, § 2D1.1(a)(5), (c)(4): | 32 |
| | b. | Acceptance of Responsibility, U.S.S.G. §3E1.1(a),(b): | - 3 |
| | c. | Total Offense Level: | 29 |

Plea Agreement ¶ 7. Probation agrees with the parties' calculation. PSR ¶¶ 3, 17–26.

The PSR calculates that Matute has a criminal history score of four, which places him in Criminal History Category III. *Id.* ¶ 33. The government agrees with Probation's criminal history calculation.

## IV.   SENTENCING RECOMMENDATION

### A.   Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), including:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B.   Discussion of Section 3553(a) Factors

The seriousness of Matute's offense speaks for itself. He engaged in the distribution of dangerous drugs that caused damage not only to the individuals using those drugs but also to their families and communities. As noted in *United States v. Ailemen*, "[w]e begin with a clear recognition

that trafficking in illegal narcotics (heroin and cocaine, as here alleged), without more, causes serious harm to society." 165 F.R.D. 571, 596 (N.D. Cal. 1996).  Additionally, following the June 2018 search and arrest that gave rise to his federal charges, Matute left for Honduras, reportedly because he believed law enforcement was looking for him.  *See* U.S. Opp. MTD (Dkt. 22) at 15.  While the government cannot show that Matute knew he was formally charged, Matute chose to leave the United States knowing that he was facing potential prosecution, which resulted in the delayed resolution of this case and the need for the government to extradite him from Honduras.

On the other hand, the government acknowledges the mitigating factors identified in the PSR, including a significant history of personal trauma.  *See* PSR ¶¶ 41–45.  Moreover, the government believes that a downward variance is warranted in this case considering the age of the charged conduct and the need to avoid unwarranted sentencing disparities.  For example, the government notes that two defendants identified in the PSR in a related case, Victor Viera-Chirinos (CR 19-00367-2 CRB) and Karen Castro Torres (CR 19-00367-6 CRB), both of whom were more culpable than Matute, were sentenced by this Court to 83 months and 72 months of imprisonment, respectively.

Balancing the seriousness of the offense against those mitigating factors and the need to avoid unwarranted sentencing disparities, the government believes that a sentence of 57 months' imprisonment is sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

## V. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Matute to a term of 57 months' imprisonment followed by three years of supervised release.

DATED: February 14, 2025                          Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney


 */s/ Dan Karmel*
DAN M. KARMEL
Assistant United States Attorney